IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| VOTE TO REDUCE DEBT,<br><br>    Plaintiff,<br><br>v.<br><br>RED STATE PRODUCTIONS, LLC,<br><br>    Defendant. | Civil Case No.4:14-cv-987 |

## COMPLAINT

COMES NOW Plaintiff Vote to Reduce Debt ("V2RD"), through its counsel, and, for its Complaint against Red State Productions, LLC ("Red State") alleges and states as follows:

### PARTIES

1. Plaintiff V2RD is a domestic nonprofit corporation organized under the Texas Business Organizations Code with a registered address of 2101 Cedar Springs Road, Suite 1050, Dallas, Texas 75201, and with its principal place of business at 108 West 8th Street, Suite 400, Fort Worth, Texas 76101. V2RD also operates under the assumed names "Vote 2 Reduce Debt" and "V2RD".

2. Defendant Red State is a limited liability company organized under the laws of the state of South Dakota. On information and belief, Red State's principal place of business is in Washington D.C. Red State may be served with process through its registered agent Arends Law, P.C., 101 W. 69th Street, Suite 105, Sioux Falls, South Dakota, 57108.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Texas.

## FACTUAL BACKGROUND

5. Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

6. V2RD is a nonprofit corporation registered with the State of Texas, a "political organization" under Section 527 of the Internal Revenue Code, and a political committee ("PAC") registered with the Federal Election Commission. V2RD's major purpose is to educate and inform voters about the importance of the national debt and its crippling effect on America's economy, while simultaneously building awareness of, and support for, V2RD's endorsed candidates in various states.

7. Red State holds itself out as a "full-service event productions" organization.

8. On August 8, 2014, V2RD engaged Red State to plan, design, and execute grassroots-building political rallies to promote V2RD and its issues.

9. Red State's scope of work is memorialized in the document it sent to V2RD on or about August 8, 2014 entitled "Vote 2 Reduce Debt Multi-State Event Production Budget" (the "Statement of Work") in which Red State set forth its obligations and commitments.

10. Specifically, Red State agreed to "plan, design, and execute grassroots-building political events, herein referred to as "rallies," for Vote 2 Reduce Debt (V2RD), in V2RD's eight

targeted states: AK, AR, CO, LA, IA, MI, MT, and NC. These rallies were to include national, state, and local elected officials while directly advocating support for the election of candidates supported by V2RD. Further, Red State also promised to handle "VIP recruitment, audience turnout, event promotion, venue permitting, credentials/tickets if required, security, VIP holding/staging, participant/voter capture, media and PR."

11. The total cost for event production was $200,000.00, which was paid in advance by V2RD to Red State.

12. The Statement of Work is an enforceable contractual agreement between V2RD and Red State.

### Red State Failed to Perform Its Agreed Upon Services

13. In multiple material respects, Red State failed to perform as agreed in its Statement of Work. The following examples, separately and collectively, are representative examples of Red State's material breaches of the Red State-V2RD agreement (they are not exhaustive examples):

**(A) Red State Failed to Generate Audience Turnout at Its Three Planned Rallies**

14. Red State failed to meet one of its core responsibilities under the agreement—generate citizen participation at the V2RD-sponsored rallies. For instance, Red State agreed to conduct rallies in Wasilla and Anchorage, Alaska. Red State contractually agreed to maximize the turnout of citizen participants and, in turn, to enlist those citizens into the effort to elect officials supported by V2RD. Red State failed to meet its obligations under the contract, instead producing "rallies" that were mostly populated by paid members of V2RD and not by citizen participants. On information and belief, at least one "rally" had as few as seven (7) citizens participate.

**(B) Red State Failed to Promote the Rallies**

15.     Red State also contractually agreed to use a variety of promotional methods to ensure maximum attendance at the rallies. Red State's Statement of Work states: "A variety of advertising and promotional methods will be used by [Red State], to alert local citizens to the date, time and place of these events, and to ensure maximum audience turnout and participation. [Red State]'s expertise at earned media generation will ensure that each rally's impact is exponentially magnified via news coverage in traditional print media, TV news media as well as through online outlets."

16.     Red State failed to promote the events as agreed in the Agreement.

**(C) Red State Failed to Capture Participant and Voter Information**

17.     Red State also contractually agreed to collect attendee data cards allowing V2RD to engage in voter contact and voter identification.  Red State's Statement of Work states "A heavy emphasis will be placed on collecting contact information from the citizen participants at each RSP-produced rally. This will allow the V2RD field team to follow up with a phone call and email in order to enlist the citizen participation into V2RD's volunteer field operation, as well as for Get Out The Vote (GOTV) efforts."

18.     Red State failed to collect attendee data cards. Red State has not provided V2RD will any attendee data information collected at either of the above-mentioned Alaska rallies or the separate rally held in Marion, Iowa.

**(D) Red State Failed to Secure Media Coverage**

19.     Red State also contractually agreed to secure media coverage for the rallies. Red State's Statement of Work states Red State's "expertise at earned media generation will ensure

**COMPLAINT**                                                                                                                                     **4**

that each rally's impact is exponentially magnified via news coverage in traditional print media, TV news media, as well as through online outlets."

20. On information and belief, Red State failed to secure (or even attempt to solicit) any news coverage in print, television, radio, or on online outlets. Specifically, after a thorough search of all Alaska news outlets, there was no news coverage in print, TV, radio, or online outlets concerning the V2RD rallies, and no proof of an attempt by Red State to secure any coverage.

**(E) Red State Used the Funds Paid by V2RD to Promote Another PAC**

21. Red State promised to promote V2RD and its issues. Red State's Statement of Work states "Red State Productions will plan, design and execute grassroots-building political events, herein referred to as "rallies," **for Vote 2 Reduce Debt (V2RD)**." (emphasis added)

22. Red State promoted another PAC, Person-to-Person, and its issues. While being paid directly for production of rallies for V2RD, Red State created stage backdrops, rally banners and signage prominently portraying Person-to-Person PAC as a co-sponsor of the rally events. Person-to-Person PAC is in fact a vendor to V2RD, not a co-sponsor of anything related to V2RD.

23. The photographs of the Alaska rallies feature state coordinators from Alaska and Iowa wearing People-to-People t-shirts, not V2RD logos. Also, Red State produced a large banner for Person-to-Person that is included in one of the photos of the Alaska rallies.

**(F) Red State Failed to Perform the Rallies in the Time Specified**

24. Red State promised that "[t]hese events will take place between late August and early November 2014 in anticipation of the 2014 U.S. Senate elections."

25.     As of October 7, 2014, only one of the eight rallies was "confirmed." All other rallies were listed as "tentative" or "TBD."

## CLAIMS FOR RELIEF

### Cause of Action I – Breach of Contract

26.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

27.     The Statement of Work described above constitutes a valid contract between V2RD and Red State.

28.     V2RD has fully performed its obligations under the contract.

29.     Red State breached the contact when Red State failed to perform as agreed in its Statement of Work with respect to (a) audience turnout, (b) event promotion, (c) participant/voter capture, (d) media and PR. Furthermore, Red State failed to perform additional services as specified in the Statement of Work including failure to (e) promote V2RD and its issues and instead used the funds paid by V2RD to promote another PAC; and (f) complete the rallies during the time frame specified.

30.     As a direct and proximate result of Red State's breaches of contract, V2RD has suffered damages in an amount greater than $75,000, the specific amount to be proven at trial

31.     V2RD is entitled to recover from Red State all damages it sustained as a result of Red State's breach.

### Cause of Action II – Unjust Enrichment

32.     Plaintiff realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

33. As alleged more specifically above, V2RD paid Red State $200,000.00, thereby conferring a benefit to Red State.

34. Red State had knowledge and appreciation of the benefit conferred upon it by V2RD.

35. Red State had knowledge that V2RD performed such tasks in expectation of services by Red State as set forth in the State of Work.

36. Red State has now absconded with the benefit conferred by V2RD without equitably compensating V2RD for the benefit. It would be inequitable for Red State to retain that benefit without payment to V2RD.

## JURY DEMAND

37. V2RD demands a trial by jury on all issues triable by jury.

## REQUEST FOR PLACE OF TRIAL

38. V2RD requests Fort Worth, Texas, as the place of trial.

## ATTORNEYS' FEES

39. V2RD has been required to retain the undersigned counsel and has agreed to pay them a reasonable fee for their services in prosecuting V2RD's claims in this action. V2RD is entitled to recover its attorneys' fees incurred in connection with this action pursuant to Texas Civil Practice and Remedies Code §§ 38.001(8); *Coffel v. Stryker Corp.,* 284 F.3d 625, 640 (5th Cir. 2002).

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against Defendant and in favor of Plaintiff as follows:

  a. cite the Defendant to appear and answer

  b. award Plaintiff all equitable and legal relief to which it is entitled, including all damages to which it is entitled, including exemplary damages;

  c. render judgment against Defendant for pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, costs of suit, and for all other relief that the Court deems appropriate.

Dated: December 9, 2014

            Respectfully submitted,

            By: /s/ Michael T. Hilgers
            Michael T. Hilgers
            mhilgers@goberhilgers.com
            Lauren K. Duhon
            lkduhon@goberhilgers.com
            GOBER HILGERS PLLC
            2101 Cedar Springs Rd, Suite 1050
            Dallas, Texas 75201
            Telephone: (214) 842-6829
            Facsimile: (877) 437-5755

            ATTORNEYS FOR PLAINTIFF